**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| TABLETOP MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 16-1121-RGA-MPT |
| | ) | |
| AMI ENTERTAINMENT NETWORK, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

**I.     INTRODUCTION**

On December 2, 2016, Tabletop Media, LLC ("Tabletop") filed this action against

AMI Entertainment Network, LLC ("AMI") requesting a declaratory judgment that its pay-

at-the-table tablet for the dining segment ("Ziosk") does not infringe any of the claims of

AMI's U.S. Patent No. 9,403,091 ("the '091 patent").[1]  On May 1, 2017, AMI filed a

motion to dismiss pursuant to FED. R. CIV. P. 12(b)(1) for lack of subject matter

jurisdiction.

Pending before the court is AMI's motion to dismiss.  This Report and

Recommendation addresses whether Tabletop sufficiently established subject matter

jurisdiction, and, specifically, whether there is an actual case or controversy.  For the

reasons stated below, it is recommended that the defendant's motion be denied.

---

[1] D.I. 1.

## II.      BACKGROUND

### A.      Parties

Tabletop is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in Dallas, Texas.[2]  AMI is a limited liability corporation organized and existing under the laws of the State of Delaware with its principal place of business in Grand Rapids, Michigan.[3]

### B.      Patent-in-Suit

AMI asserts it currently holds and has held all rights to the patent-in-suit by assignment from inventors David Logan, James Stelzer, Robert Mills, and Thomas Kane since the United States Patent and Trademark Office issued the '091 patent on August 2, 2016.[4]  The '091 patent is entitled "Amusement Device Having Time-Based Operating Modes."[5]

### C.      Statement of Facts

On November 7, 2016, AMI's President and Chief Executive Officer, Michael Maas, sent a letter to Tabletop's General Counsel, Bhaveeni Parmar.[6]  In the letter, Mr. Maas asserted AMI's ownership of the '091 patent and alleged that the patent covers Tabletop's Ziosk's feature where diners play a game on the tablet and then pay for that game as part of the diner's food bill.[7]  Mr. Maas then recommended that the parties

---

2 *Id.* at ¶ 1.
3 *Id.* at ¶ 2.
4 D.I. 1-1 at 4.
5 *Id.*
6 D.I. 8-1.
7 *Id.*

discuss a strategic licensing agreement and requested a response by November 17.[8]

Mr. Maas also sent the letter to Tabletop's Chairman and Co-Founder, Jack Baum, and

its President and Chief Executive Officer, Austen Mulinder.[9]  In the email forwarding the

letter, Mr. Maas stated "[s]ince these things always have an unfortunate 'legal' tone to

them, and because I value our relationship, I didn't want you to first hear about this from

your counsel" and emphasized his desire to engage in a synergetic relationship.[10]

On November 14, 2016, Mr. Mulinder responded via email and expressed no

interest in the '091 patent, stating that the patent was not relevant to Tabletop's Ziosk.[11]

Nonetheless, Tabletop was interested in developing synergies between the two

businesses and recommended setting up a meeting.[12]

On November 17, 2016, Mr. Maas responded via email, stating he did think that

the patent was relevant to Ziosk and recommended a meeting in December.[13]  He

emphasized that, at the meeting, they would discuss both the patent and the synergy

opportunities.[14]  Mr. Maas also stated he would like his patent counsel, John Simmons,

to attend the meeting in order to address the patent issue and welcomed Ms. Parmar to

join.[15]

From November 20 to 22, 2016, Mr. Maas and Mr. Mulinder exchanged emails

---

[8] *Id.*
[9] D.I. 8-2.
[10] *Id.*
[11] D.I. 8-3.
[12] *Id.*
[13] D.I. 8-4.
[14] *Id.*
[15] *Id.*

attempting to schedule a meeting.[16]  Mr. Mulinder recommended a one-on-one meeting between himself and Mr. Maas with a subsequent meeting that would include the lawyers.[17]  Mr. Maas asked whether the meeting with counsel would occur on the same day, but Mr. Mulinder wished to discuss the issue at their intial meeting.[18]  Mr. Maas requested to have a "short, very informal, phone call" prior to their initial meeting between Ms. Parmar and Mr. Simmons.[19]

On November 23, 2016, Mr. Simmons, via telephone, asked Ms. Parmar why Tabletop thought the '091 patent was not relevant to its business.[20]  She explained that the Ziosk did not grant a block of time to play games as claimed in the '091 patent.[21]

On December 2, 2016, Tabletop filed its declaratory judgment motion against AMI without notice and days before their scheduled December 8 meeting.[22]  The meeting did take place.[23]  At the meeting, Mr. Mulinder expressed that he had been directed by counsel not to discuss the patent, but was willing to discuss possible synergy possibilities.[24]

The parties later entered into a non-disclosure agreement in order to discuss business information such as AMI's intellectual property.[25]  AMI has not threatened any

---

[16] D.I. 8-6.
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] D.I. 1 at 3.
[21] D.I. 8 at 3.
[22] D.I. 8 at 4.
[23] *Id.*
[24] *Id.*
[25] *Id.*

litigation against Tabletop.[26]  At the same time, AMI has not assured Tabletop that it will

not sue Tabletop for infringement.[27]

## III.    STANDARD OF REVIEW

### A.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

When jurisdiction is challenged, the party asserting subject matter jurisdiction has

the burden of proving its existence.[28]  Under Rule 12(b)(1), the court's jurisdiction may

be challenged either facially, that is, based on the legal sufficiency of the claim, or

factually, based on the sufficiency of jurisdictional facts.[29]  Where there is a facial attack

on jurisdiction, the court must accept as true the allegations contained in the

complaint.[30]  Dismissal for a facial challenge to jurisdiction is "proper only when the

claim 'clearly appears to be immaterial and made solely for the purpose of obtaining

jurisdiction or . . . is wholly insubstantial and frivolous.'"[31]

When there is a factual attack, the court is not "confine[d] to the allegations in the

. . . complaint, but [may] consider affidavits, depositions and testimony to resolve factual

issues bearing on jurisdiction."[32]  Under that circumstance, "no presumptive truthfulness

attaches to plaintiff's allegations, and the existence of disputed material facts will not

---

[26] *Id.*

[27] D.I. 9 at 4.

[28] *See Carpet Group Int'l v. Oriental Rug Importers Ass'n, Inc.*, 227 F.3d 62, 69 (3d Cir. 2000).

[29] *Moore's Federal Practice* § 12.30[4] (3d ed. 1997).

[30] *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

[31] *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1408-09 (3d Cir. 1991) (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

[32] *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997); *see also Mortenson v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891-92 (3d Cir. 1977).

preclude the trial court from evaluating for itself the merits of the jurisdictional claims."[33]

In addition, the district court is limited in its discretion to dismiss the case.[34] When there is an actual controversy and a declaratory judgment would decide the legal relations between the parties, the declaratory judgment is usually not dismissible.[35] Moreover, if the court decides to dismiss an actual controversy, then it must provide support for the dismissal.[36]

## B.    Declaratory Judgment

"The Declaratory Judgment Act creates a remedy by which federal courts 'may declare the rights and other legal relations of any interested party seeking such declaration' when there is a 'case of actual controversy.'"[37]  Prior to *MedImmune, Inc. v. Genentech, Inc.*,[38] declaratory judgment actions required there be "both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity."[39]  However, in *MedImmune*, the Supreme Court rejected this reasonable apprehension of suit test as the sole way to bring a declaratory judgment action.[40]  The Court held that jurisdiction over a declaratory judgment action requires:

[33] *Carpet Group*, 227 F.3d at 69 (quoting *Mortenson*, 549 F.3d at 891).
[34] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289 (1995).
[35] *Genentech v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993).
[36] *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345 (Fed. Cir. 2005).
[37] *Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Trust*, 674 F. Supp. 2d 562, 565 (D. Del. 2009) (quoting 28 U.S.C. § 2201).
[38] 549 U.S. 118 (2007).
[39] *BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978 (Fed. Cir. 1993).
[40] *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1336 (Fed. Cir. 2008) (citing *Caraco Pharms. Labs. Ltd. v. Forest Labs.*, 527 F.3d 1278, 1291 (Fed. Cir.

the dispute be definite and concrete, touching the legal relations of parties
having adverse legal interests; and that it be real and substantial and
admit of specific relief through a decree of a conclusive character, as
distinguished from an opinion advising what the law would be upon a
hypothetical state of facts.  Basically, the question in each case is whether
the facts alleged, under all the circumstances, show that there is a
substantial controversy, between parties having adverse legal interests, of
sufficient immediacy and reality to warrant the issuance of a declaratory
judgment.[41]

However, the difference between a hypothetical and actual controversy is difficult

to determine, and, therefore, the court must utilize a fact-based analysis.[42]  To satisfy

immediacy and reality, the plaintiff must show (1) an injury-in-fact (2) that is "fairly

traceable" to defendant's conduct, and (3) redressable.[43]  An adverse legal interest

requires the parties to have a dispute over legal rights, i.e., "an underlying legal cause

of action that the declaratory defendant could have brought or threatened to bring."[44]

Thus, without adverse legal rights, an adverse economic interest is an insufficient basis

for a declaratory judgment claim.[45]

In the patent context, the alleged injury is a "restraint on the free exploitation of

non-infringing goods," or an imminent threat of such restraint.[46]  Thus, "[i]f . . . a party

---

2008)).
    [41] *MedImmune*, 549 U.S. at 127 (internal quotations omitted) (quoting *Aetna Life
Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)).
    [42] *Prasco*, 537 F.3d at 1336 (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312
U.S. 270, 273 (1941) and *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 879 (Fed.
Cir. 2008)).
    [43] *Id.* at 1338.
    [44] *Arris Group, Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1374-75 (Fed. Cir.
2011).
    [45] *Id.*
    [46] *Caraco Pharms. Labs. Ltd. v. Forest Labs.*, 527 F.3d 1278, 1291 (Fed. Cir.
2008) (quoting *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt*, Inc., 148 F.3d 1355,
1360 (Fed. Cir. 1998)).

has actually been charged with infringement of the patent, there is, *necessarily*, a case or controversy adequate to support jurisdiction" at that time.[47]  When there is no license between the two parties, knowledge of a patent's existence and potential risk of infringement does not meet the actual case or controversy requirement.[48]  Moreover, communication between a patent owner to another party where the owner identifies the patent and the other party's product line is not enough to establish a case or controversy.[49]  Nevertheless, the case or controversy requirement may be satisfied if the patentee affirmatively puts the other party in the position where the party must "either pursu[e] arguably illegal behavior or abandon that which he claims a right to do."[50]  Thus, where one party asserts its patent rights against the other party's product, and the other party contends that it can continue to create its product without a license, then there is a case or controversy because it creates a reasonable apprehension of infringement.[51]  In addition, the alleged infringing party does not need to risk an infringement suit before seeking a declaratory judgment.[52]  Furthermore, a promise not to sue is not sufficient to eliminate a controversy when the party's conduct shows a willingness to enforce the patent, especially because it does not limit the possibility of future enforcement.[53]

---

[47] *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 96 (1993) (emphasis in original).
[48] *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380-81 (Fed. Cir. 2007).
[49] *Hewlett-Packard Co. v. Acceleron, LLC*, 587 F.3d 1358, 1362 (Fed. Cir. 2009).
[50] *SanDisk*, 480 F.3d at 1381.
[51] *Id.*; *see also Arrowhead Indus. Water, Inc. v. Ecolochem Inc.*, 846 F.2d 731, 737 (Fed. Cir. 1988).
[52] *SanDisk*, 480 F.3d at 1381.
[53] *Id.* at 1382-83.

## IV.    ANALYSIS

### A.    Parties' Contentions

First, AMI argues the court should weigh and consider evidence outside of the pleadings because Tabletop attached only one of the parties' communications.[54] Second, AMI asserts there is no actual case or controversy between the parties because AMI never threatened litigation against Tabletop, but rather wished to engage in a business relationship.[55]  In the alternative, AMI asks the court to use its discretion to dismiss the case so that the parties may resolve the issue through a business relationship.[56]

Tabletop contends there is an actual case or controversy because AMI put Tabletop in the position of continuing to use a product that allegedly infringes the '091 patent or to abandon its Ziosk tablet due to AMI contacting Tabletop and asserting patent rights against Tabletop's product in multiple communications.[57]  Moreover, AMI has not provided assurances that it will not sue Tabletop for infringement.[58]  Tabletop also argues that public policy favors the court exercising its jurisdiction because AMI's conduct is the type of conduct that the Declaratory Judgment Act intended to prevent.[59] Finally, it is unclear how dismissing the claim would help in resolving the dispute because the dispute will remain as long as AMI contends Tabletop's Ziosk product is

---

[54] D.I. 8 at 4-5.
[55] *Id.* at 6.
[56] *Id.* at 7.
[57] D.I. 9 at 6.
[58] *Id.* at 8.
[59] *Id.* at 9.

covered by the '091 patent.[60]

## B. Case or Controversy Analysis

Since this is a factual attack about whether there is an actual case or controversy, the court may look to facts outside of the complaint. For a case or controversy to exist, there must be a concrete dispute, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.[61] Due to the issue's fact-specific nature, the court looked to cases with similar fact patterns.

In *Hewlett-Packard Co. v. Acceleron, LLC*, Acceleron, a patent-holding company, contacted Hewlett-Packard stating "I am writing to call your attention to the referenced patent. . . . This patent was recently acquired by Acceleron, and relates to Blade Servers."[62] In addition, the letter provided Hewlett-Packard with a deadline to respond within 14 days.[63] Hewlett-Packard responded stating that it would like more information and agreed to not file a declaratory judgment action for 120 days.[64] Acceleron rejected the 120 days, giving Hewlett-Packard another 14 days to decide whether to meet with Acceleron and asserting that Hewlett-Packard had no basis for declaratory judgment.[65] While the court held a communication from a patent owner to another party, merely identifying its patent and the other party's product line, without more, could not establish

---

[60] *Id.*
[61] *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotations omitted) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)).
[62] *Acceleron*, 587 F.3d at 1360.
[63] *Id.*
[64] *Id.*
[65] *Id.* at 1360-61.

adverse legal interests between the parties, let alone the existence of a definite and concrete dispute, the court ultimately decided that there was a case or controversy because Acceleron "took the affirmative step of twice contacting HP directly, making an implied assertion of its rights under the '021 patent against HP's Blade Server products, and HP disagreed."[66]

Here, AMI asserted its rights under the '091 patent and alleged Tabletop's Ziosk had features that were covered by the patent.[67]  In addition, AMI requested a response within 10 days.[68]  In its response, Tabletop insisted the patent was not relevant to its Ziosk product, but AMI continued to assert the patent's relevance and requested that its patent lawyer be included in a meeting between the parties.[69]  Just as in *Acceleron*, AMI affirmatively contacted Tabletop asserting its patent rights, Tabletop disagreed, and AMI continued to claim that the patent was relevant to Tabletop's Ziosk.  Thus, there is an actual case and controversy because the two parties have opposing legal interests that are redressable by a court decision.

In *SanDisk Corp. v. STMicroelectronics, Inc.*, both parties were in the flash memory storage market.[70]  They entered into cross-licensing negotiations, but the negotiations never resulted in an agreement.[71]  At the licensing meeting, STMicroelectronics presented comparative statistics of the two parties' patents, then

---

[66] *Id.* at 1362, 1364.
[67] D.I. 8-1.
[68] *Id.*
[69] D.I. 8-3; D.I. 8-4.
[70] *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1376 (Fed. Cir. 2007).
[71] *Id.*

their technical experts gave a presentation lasting four to five hours on how SanDisk

was infringing their patents and, based on that information, asserted the right to a

royalty.[72]  SanDisk maintained it could continue its conduct without paying royalties.[73]

The court held that there was a case or controversy and that SanDisk did not need to

"risk a suit for infringement by cutting off licensing discussions and continuing in the

identified activity before seeking a declaration of its legal rights."[74]

　　While in *SanDisk* the parties were already in the licensing negotiation process,

the court determined there was a case or controversy because STMircoelectronics

asserted its rights and SanDisk disagreed, refused to pay royalties, and asserted its

right to continue its conduct.  In just the same way, AMI explicitly asserted that it

"believe[s] that the '091 patent covers the Ziosk tablet's feature that allows restaurant

diners to play a game on the tablet and pay for that game as a part of the diner's food

and beverage bill."[75]  Tabletop responded that the patent was not relevant to its tablet.[76]

The two parties continued to maintain their respective positions throughout their

communications.[77]  Therefore, there is an actual case or controversy because the facts

are materially similar to the cases noted above in that one party asserts its rights, the

other asserts its opposing rights, and both maintain their respective positions.

　　In *Prasco, LLC v. Medicis Pharm. Corp.*, the court found that there was no actual

case or controversy because the defendant had not asserted rights against the plaintiff

---

[72] *Id.* at 1375, 1382.
[73] *Id.* at 1382
[74] *Id.*
[75] D.I. 8-1.
[76] D.I. 8-3.
[77] *See* D.I. 8-4.

and the defendant was unaware of the plaintiff's product.[78]  The plaintiff based its claim

on the fact that defendant's products were marked with their patent numbers and that

the defendant had brought a different patent infringement suit against another

company.[79]  *Prasco* is readily distinguishable from this matter because, here, the parties

were aware of each other products and have discussed the '091 patent with each

asserting their opposing rights.  Thus, where the plaintiff in *Prasco* unsuccessfully

argued it had suffered harm due to "paralyzing uncertainty," here, Tabletop has a

reasonable apprehension of an infringement suit because of the communicated adverse

legal interests.

### C.  District Court Discretion

While the district court has the discretion to dismiss a declaratory judgment

claim, that discretion is limited when there is an actual case or controversy.[80]  When

there is an actual controversy and a declaratory judgment would decide the legal

relations between the parties, the declaratory judgment is usually not dismissible.[81]  The

Declaratory Judgment Act was enacted to prevent "extra-judicial patent enforcement

with scare-the-customer-and-run tactics that infect the competitive environment of the

business community with uncertainty and insecurity."[82]  Also, it provides recourse for

parties accused of patent infringement so they are not forced to choose "between the

incurrence of a growing potential liability for patent infringement and abandonment of

---

[78] 537 F.3d 1329, 1334 (Fed. Cir. 2008).
[79] *Id.*
[80] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289 (1995).
[81] *Genentech v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993).
[82] *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 735 (Fed. Cir. 1988).

their enterprises," but rather "could clear the air by suing for a judgment that would settle the conflict of interests."[83]

This is the type of situation the Declaratory Judgment Act was designed to address. The parties have an adverse legal interest, and, the adverse legal interest is "fairly traceable" to AMI's conduct. Thus, a declaratory judgment would decide whether Tabletop's Ziosk infringes on the '091 patent, redressing that particular conflict. Therefore, this courts declines to utilize its discretion to dismiss the claim.

## V.      CONCLUSION

For the foregoing reasons, I recommend that:

(1) Defendant's motion to dismiss for lack of subject matter jurisdiction (D.I. 7) be DENIED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), FED. R. CIV. P. 72(b)(1), and D. DEL. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Objections and responses are limited to ten (10) pages each.

The parties are directed to the Court's Standing Order in Non-Pro Se Matters for Objections Filed under FED. R. CIV. P. 72, dated October 9, 2013, a copy of which is available on the Court's website, www.ded.uscourts.gov.


Date:  October 10, 2017                    ___/s/ Mary Pat Thynge___
                                            Chief U.S. Magistrate Judge

---

[83] *Id.*