IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TABLETOP MEDIA, LLC, <br><br> Plaintiff, <br><br> v. <br><br> AMI ENTERTAINMENT NETWORK, LLC, <br><br> Defendant. | Civil Action No. 16-cv-1121-RGA-MPT |
| AMI ENTERTAINMENT NETWORK, LLC, <br><br> Plaintiff, <br><br> v. <br><br> E LA CARTE, INC., <br><br> Defendant. | Civil Action No. 17-cv-916-RGA-MPT |

## MEMORANDUM OPINION

Kelly E. Farnan, Nicole K. Pedi, RICHARDS, LAYTON & FINGER, PA, Wilmington, DE; Samuel E. Joyner (argued), Chijioke E. Offor (argued), SHORE CHAN DEPUMPO LLP, Dallas, TX.

    Attorneys for Tabletop Media, LLC

John D. Simmons (argued), Dennis J. Butler, PANITCH SCHWARZE BELISARIO & NADEL, LLP, Wilmington, DE; Keith A. Jones, PANITCH SCHWARZE BELISARIO & NADEL, LLP, Philadelphia, PA.

    Attorneys for AMI Entertainment Network, LLC

Sean M. Brennecke, KLEHR, HARRISON, HARVEY, BRANZBURG LLP, Wilmington, DE; Todd A. Noah (argued), DERGOSITS & NOAH LLP, San Francisco, CA; Andrew S. MacKay, Padmini Cheruvu, DONAHUE FITZGERALD LLP, Oakland, CA.

    Attorneys for E La Carte, Inc.

June 13, 2018


**ANDREWS, U.S. DISTRICT JUDGE:**

Presently before the Court is the issue of claim construction of multiple terms in U.S. Patent No. 9,403,091 ("the '091 patent"). The Court has considered the parties' joint claim construction brief. (Civ. Act. No. 16-1121, D.I. 50; Civ. Act. No. 17-916, D.I. 32).[1] The Court heard oral argument on May 16, 2018. (D.I. 53).

## I. BACKGROUND

On December 2, 2016, Tabletop Media filed suit against AMI for a declaratory judgment of non-infringement of the '091 patent. (D.I. 1). On July 7, 2017, AMI filed suit against E La Carte, alleging infringement of the '091 patent. (Civ. Act. No. 17-916, D.I. 1).

The invention claimed in the '091 patent "relates generally to an amusement device and, more particularly, relates to an amusement device having time-based operating modes." ('091 patent, 1:21–23).

## II. LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). "'[T]here is no magic formula or catechism for conducting claim construction.' Instead, the court is free to attach the appropriate weight to appropriate sources 'in light of the statutes and policies that inform patent law.'" *SoftView LLC v. Apple Inc.*, 2013 WL 4758195, at *1 (D. Del. Sept. 4, 2013) (quoting *Phillips*, 415 F.3d at 1324) (alteration in original). When construing patent claims, a court considers the literal language of the claim, the patent specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979–80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Of these sources, "the

---

[1] Unless otherwise noted, all references to the docket refer to Civil Action No. 16-1121.

specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315.

"[T]he words of a claim are generally given their ordinary and customary meaning. . . . [Which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312–13. "[T]he ordinary meaning of a claim term is its meaning to [an] ordinary artisan after reading the entire patent." *Id.* at 1321. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.

When a court relies solely upon the intrinsic evidence—the patent claims, the specification, and the prosecution history—the court's construction is a determination of law. *See Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015). The court may also make factual findings based upon consideration of extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317–19. Extrinsic evidence may assist the court in understanding the underlying technology, the meaning of terms to one skilled in the art, and how the invention works. *Id.* Extrinsic evidence, however, is less reliable and less useful in claim construction than the patent and its prosecution history. *Id.*

"A claim construction is persuasive, not because it follows a certain rule, but because it defines terms in the context of the whole patent." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would

2

exclude the inventor's device is rarely the correct interpretation." *Osram GMBH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007).

### III. PATENT-IN-SUIT

Claim 1 of the '091 patent is representative. That claim reads as follows:

1. A table-top, counter-top, or table-mounted amusement device comprising:
(a) a frame having a base for contacting or connecting to a table or counter;
(b) a touchscreen display disposed within the frame and configured to accept touch input from a user;
(c) a currency accepter mounted to or disposed in the frame;
(d) a memory that stores a system control program;
(e) a communications driver disposed in the frame; and
(f) a controller disposed within the frame and operatively connected to the memory, the communications driver, the touchscreen display, and the currency accepter, the controller controlling the display based upon the system control program retrieved from the memory and based upon inputs received by the touchscreen display, the controller being configured to:
> (i) *grant a user a block of time* during which the user is permitted to selectively retrieve and play one of *a plurality of electronic games* and retrieve and play at least one other of the plurality of electronic games, *each of the plurality of electronic games being different from the others and providing a score* that does not affect the block of time granted, and
> (ii) *determine a total amount of a payment or credit owed for the block of time for inclusion as a line item on a food and/or beverage check presented to the user*.

('091 patent, claim 1) (disputed terms italicized).

### IV. CONSTRUCTION OF DISPUTED TERMS

#### 1. "grant a user a block of time"

    a. *Tabletop's proposed construction*: plain and ordinary meaning. Alternatively, "grant or give a user a known amount of time"[2]

    b. *AMI Entertainment's proposed construction*: "begin a continuous period of time that ends when the user desires or upon expiration of a predetermined limit"

    c. *E La Carte's proposed construction*: "allot to a user a predetermined and definite duration of time expressed in units of time"

---

[2] (*See* D.I. 53 at 24:20–22).

d. *Court's construction*: "grant to a user a specified and finite amount of time"

The parties primarily dispute whether, as AMI argues, a "block of time" may be open-ended when granted, or whether, as Tabletop[3] and E La Carte argue, a "block of time" must be of a known or predetermined and definite duration when granted.

Contrary to AMI's contentions, I see no basis in the intrinsic record to conclude that "block of time," as that term is used throughout the '091 patent, includes a "continuous period of time that ends when the user desires."

Excluding the claims, the phrase "block of time" appears fifty times in the '091 patent. In my opinion, not once does the patentee suggest that a "block of time" is indeterminate.

The specification provides, "In any of the preferred time-based embodiments, a user is permitted to play as many games as they desire during a block of time. . . . If the user gets bored with a particular game or desires to play a different game, the user may exit the game and choose another game so long as there is time remaining in the block of time." ('091 patent, 5:29–35). Further, it provides, "The user may repeat this process of selecting another game as many times as they desire as long as there is time remaining in the block of time." (*Id.* at 4:56–58). It states also, "Optionally, the controller is configured to prompt the user to purchase another block of time just before the block of time elapses." (*Id.* at 8:16–18).

In each of these examples the user is limited by the finite duration of the "block of time." The user may continue playing on the device only so long as time remains in the "block of time"

---

[3] Although Tabletop maintains that the Court need not construe this term, it appears to agree with E La Carte's position in arguing that "[t]he controller is not configured to 'grant' an unknown period of time that ends when the user desires." (D.I. 50 at 38 (emphasis omitted)). Further, Tabletop states in the briefing that "the Court should adopt [its] or E La Carte's proposed construction because it stays true to the claim language and accords with the intrinsic record." (*Id.* at 36). At the *Markman* hearing, Tabletop offered an alternative construction, that is, "grant or give a user a known amount of time" (*see* D.I. 53 at 24:20–22), which also seems consistent with E La Carte's proposed construction. Thus, I understand E La Carte and Tabletop essentially to take the same position in regard to the proper meaning of this term.

4

granted. I do not think, as AMI argues, that requiring the "block of time" to be of a specified and finite duration when granted improperly imports a limitation from the specification into the claims. (*See* D.I. 50 at 16 (citing *Retractable Techs., Inc. v. Becton*, 653 F.3d 1296, 1313 (Fed. Cir. 2011)). Rather, in light of the way "block of time" is used throughout the specification, I think such a construction properly comports with the plain and ordinary meaning of that term.

More generally, I think the ordinary understanding of the phrase "block of time" is an amount of time with an identified beginning and ending. Nothing in the '091 patent suggests the patentee sought to depart from the ordinary meaning of the phrase. Indeed, I think construing this term "involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314.

As support for its proposed construction, AMI relies primarily upon a sentence in the background of the invention section of the patent. (*See* D.I. 50 at 15; D.I. 53 at 7:18–24, 34:9–15). That sentence states: "Even further, it is desirable to provide an amusement device . . . where a user may switch between different games and activities for as long as they desire or until a predetermined period of time has elapsed thereby causing the user to be billed for the time retroactively." (D.I. 50 at 15 (quoting '091 patent, 2:10–15 (emphasis omitted))).

The disputed phrase, "block of time," appears nowhere in the sentence. In fact, as Tabletop pointed out at the hearing (*see* D.I. 53 at 38:12–13), the sentence does not appear to relate to the concept of "grant[ing] a user a block of time." Rather, it seems to relate to when the user is billed.

AMI cites other sentences in the background of the invention which describe amusement devices in the prior art that, unlike the invention claimed in the '091 patent, operate in a credit-

5

based mode. (*See* D.I. 50 at 15 (citing '091 patent, 1:32, 39–43)). Again, nowhere in those portions of the specification does "block of time" appear.

Further, at the *Markman* hearing, AMI pointed to language in the claim itself as support for its proposed construction. Specifically, citing a limitation in claim 1, AMI argued, "If the block of time was always known in advance, there would be no reason to determine a total amount of payment or credit owed for the block of time for inclusion of the line item." (D.I. 53 at 32:11–14).

I disagree. The limitation to which AMI referred at the hearing relates to payment and billing. I think that even where the "block of time" is of a specified and finite duration when granted, it makes sense that the device would "determine a total amount of a payment . . . owed . . . for inclusion as a line item on a food and/or beverage check presented to the user."

Finally, I am not persuaded by AMI's arguments in regard to the '091 patent's parent application. (*See* D.I. 50 at 17–19). According to AMI, during prosecution of that application, the patent examiner rejected claim 6 as indefinite "because it was 'unknown what is meant by predetermined duration of time.'" (*Id.* at 17 (citing Exh. D at p. 3)). AMI maintains that, in response to the examiner's rejection, it amended "predetermined duration of time" to "unit of time." (*Id.*). The phrase "block of time" appears in that same claim. (*See id.*). AMI also points to claim 1 of the parent application. (*Id.* at 18).

While the prosecution history of a parent application can be "highly instructive," *see Anderson Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1368 (Fed. Cir. 2007), I do not find it particularly helpful here. Although the claims cited by AMI contain the disputed phrase, "block of time," I do not think the claims are sufficiently similar such that the way that phrase is used in the parent application requires a particular construction for the disputed term in this case. *Cf. id.*

6

(recognizing prosecution history of a parent application as "highly instructive" where "the language of the application claims [was] nearly identical to the language of the claims" of the patents-in-suit). The parent claim language upon which AMI relies does not refer to the concept of "grant[ing] a user a block of time."

In any event, while I agree with E La Carte and Tabletop that "block of time" does not include a period of time that is indeterminate when granted, I think the language, "grant to a user a specified and finite amount of time," better captures the meaning of the term. I do not find it necessary to include a requirement that the "block of time" be "expressed in units of time." Nor do I think "grant" should be changed to "allot" or "give."

For the reasons stated above, I will construe this term to mean, "grant to a user a specified and finite amount of time."

2. **"a plurality of electronic games . . . each of the plurality of electronic games being different from the others and providing a score"**

   a. *Tabletop's proposed construction*: no position concerning construction of this claim term

   b. *AMI Entertainment's proposed construction*: "at least two electronic games that provide a score"

   c. *E La Carte's proposed construction*: "every game stored in the memory of the device provides a score, which is a numerical record in a competitive game expressed by points gained or lost by comparison to a standard"

   d. *Court's construction*: "at least two different electronic games that provide a score"

E la Carte and AMI primarily dispute whether, as E La Carte argues, all the electronic games available on the device must provide a score, or whether, as AMI maintains, only two games need to provide a score. Tabletop takes no position in regard to the construction of this term. (D.I. 50 at 68).

7

AMI urges that its construction "properly accords the term its plain and ordinary meaning and avoids an undue restriction of the term." (*Id.* at 56). According to AMI, the Federal Circuit "encountered a similar situation" in *Sandisk Corp. v. Memorex Products*, 415 F.3d 1278 (Fed. Cir. 2005), "and its ruling compels the same conclusion here." (*Id.*). Finally, AMI maintains that "E La Carte [] impermissibly overloads the construction with a number of unnecessary restrictions" relating to the definition of the word "score." (*Id.* at 58).

In response, E La Carte cites the patent abstract, the summary of the invention, and the detailed description of the invention to support its position that "plurality of games" refers to every game stored in the memory of the device. (*Id.* at 60–63). E La Carte faults AMI for not citing the specification to support its proposal. (*Id.* at 59, 64). It argues that AMI's reliance on *SanDisk* is misplaced (*id.* at 65) and that adopting AMI's construction would "result[] in a facially nonsensical claim" (*id.* at 67).

In my opinion, AMI's proposed construction is consistent with the specification and the claim language, and is otherwise permissible under Federal Circuit law.

The patent open-endedly claims "[a] table-top, counter-top, or table-mounted amusement device comprising" various components including "a controller . . . being configured to: [] grant a user a block of time during which the user is permitted to selectively retrieve and play one of a plurality of electronic games . . . each of the plurality of electronic games being different from the others and providing a score." ('091 patent, claim 1).

"Comprising" is a non-restrictive term which, in my opinion, does not limit the claim so as to require that every game stored on the device provides a score. *See SanDisk Corp.*, 415 F.3d at 1284 (noting that "comprising" does not "foreclose[] additional elements that need not satisfy the stated claim limitations"). In other words, I think that while each of the claimed "plurality of

electronic games," that is, at least two games, must provide a score, there may be other games on the device that do not provide a score. *Cf. id.* at 1284–85 (holding that a memory system claimed using non-restrictive language did not "exclude[] other configurations of memory cells on a physical device that, in some part, practices the claimed [invention]"). I am not persuaded by E La Carte's arguments to the contrary. Nor do I find it necessary to include a definition for the word "score" in the construction of this term.

Accordingly, I will construe this term to mean, "at least two different[4] electronic games that provide a score."

> **3. "the controller being configured to: . . . (ii) determine a total amount of a payment or credit owed for the block of time for inclusion as a line item on a food and/or beverage check presented to the user"**
>
> a. *Tabletop proposed construction*: "the controller configured to determine a total amount of a payment or credit owed for the block of time granted"
>
> b. *AMI Entertainment's proposed construction*: plain and ordinary meaning
>
> c. *E La Carte's proposed construction*: no construction necessary, but will rely on Tabletop's construction
>
> d. *Court's construction*: to be determined

AMI and Tabletop dispute whether the phrase in claim 1, "for inclusion as a line item on a food and/or beverage check presented to the user," limits the claim. AMI argues the phrase is limiting while Tabletop argues it is not. E La Carte takes no position in regard to the construction of this term. (D.I. 50 at 73).

---

[4] The disputed term identified by the parties includes the phrase, "being different from the others." But the parties do not include in their proposed constructions any language reflecting that limitation. While I think that the plain language of the term implies that the games are different from each other, I see no reason not to make that limitation explicit in the construction of this term.

9

AMI contends this "term is readily understood through the plain meaning of each word in the phrase." (*Id.* at 71). It argues that Tabletop "ignores that AMI intentionally and deliberately included the claim language . . . to differentiate the '091 patent from the parent patent and the prior art." (*Id.* at 77). According to AMI, the patent examiner "considered" the language at issue "and included [the] limitation in his Reasons for Allowance." (*Id.*).

Tabletop counters that the phrase omitted from its proposed construction is merely "a non-limiting statement of intended use and should not be read to limit the claim." (*Id.* at 73). More specifically, it argues, "The 'for inclusion' language does not recite essential structure or steps, and it is not essential to give meaning to the remainder of the claim." (*Id.* at 75). Further, according to Tabletop, the intrinsic record shows the controller is not limited by the "for inclusion" language. (*Id.* at 76 (citing '091 patent, 6:24–27)).

I agree with Tabletop.

The "for inclusion" phrase appears in an apparatus claim. "A patent applicant is free to recite features of an apparatus either structurally or functionally." *In re Schreiber*, 128 F.3d 1473, 1478 (Fed. Cir. 1997). However, "the patentability of an apparatus depends on the claimed structure, not the use or purpose of that structure." *Microsoft Corp. v. Commonwealth Sci. & Indus. Research Org.*, 572 F. Supp. 2d 786, 795 (E.D. Tex. 2008) (citations omitted); *see Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1468 (Fed. Cir. 1990) ("[A]pparatus claims cover what a device *is*, not what a device *does*."). Thus, "[t]o limit an apparatus claim, the functional language must result in a structural difference in the claimed apparatus." *Microsoft Corp.*, 572 F. Supp. 2d at 795. "Where the language does not structurally differentiate the claimed apparatus, such as language that states an intended use of the invention,

10

the language is not limiting." *Id.* "Courts review the entire patent to determine whether a functional phrase confers a structural limitation." *Id.*

Here, I think it is clear that the disputed phrase does not result in any structural difference in the controller component of the claimed device. Rather, I agree with Tabletop that the "for inclusion" language essentially functions as a "so that clause," which merely "introduces a functional description of the results from the use of" the device. *See Regents of Univ. of Cal. v. Micro Therapeutics, Inc.*, 2007 WL 734998, at *18 (N.D. Ca. March 2, 2007). In other words, the controller is configured to determine the amount owed for the block of time so that the amount can be added to a check to be presented to the user. Thus, I think whether the claim is met is independent of the purpose for which the accused product determines the amount owed.

Neither the specification nor the prosecution history suggests otherwise.

As Tabletop points out, the specification once refers to the concept of including the amount or credit owed on a check to be presented to the user. That sentence states: "In the coinless mode, the user is prompted to accept billing via menu prompts and is billed separately, e.g., as an added line item on an overall food and/or beverage check and the like." ('091 patent, 6:24–27). This sentence does not suggest the controller is configured structurally to "inclu[de] [the amount owed] as a line item on a . . . check presented to the user."

Further, contrary to AMI's assertions, I do not think the examiner's Reasons for Allowance demonstrate that the examiner relied upon the disputed language in distinguishing the invention claimed in the '091 patent from the prior art.

Accordingly, I find that the phrase, "for inclusion as a line item on a food and/or beverage check presented to the user," does not limit the claim.

The parties should submit their proposals in regard to how I should instruct the jury on the construction of this term in connection with the pretrial order. While I conclude the "for inclusion" language is not limiting, it is not clear to me that omitting it from the construction would be the proper way to handle this. Perhaps it might be better to simply tell the jury the language is not limiting.

## V. CONCLUSION

Within five days the parties shall submit a proposed order consistent with this Memorandum Opinion suitable for submission to the jury.